## DAVID WOODS *v.* B. N. BUGBEY.

SALE AND MORTGAGE OF PERSONAL PROPERTY.—The validity of a sale of personal property, as between the vendee and an attaching creditor, when tested upon the question of the delivery and continued change of possession, is to be determined by the same rule whether the sale was absolute or made by way of mortgage to secure an indebtedness.

POSSESSION OF PERSONAL PROPERTY MORTGAGED. — The mortgagee of personal property, in order to place it beyond the reach of the creditors of the mortgagor, must have actual possession of the mortgaged property.

PURCHASER OF A KILN OF BRICKS.—The purchaser or mortgagee of a kiln of bricks, while being burned, must take that possession of the property which places him in the relation to the same that owners usually have to a like kind of property, in order to secure it against attaching creditors of the vendor.

CHANGE OF POSSESSION OF A KILN OF BRICKS WHEN SOLD.—If the owner of a kiln of bricks, before the burning of the same has been completed, makes a sale thereof in good faith, and for a valid consideration, to a creditor, and the vendor completes the burning of the kiln, exercising the same apparent control as before, the sale is to be deemed fraudulent as to an attaching creditor for want of a change of possession.

WHEN SALE OF PERSONAL PROPERTY FRAUDULENT.—The statute of this State makes a sale of personal property fraudulent and void as to creditors when there is not an actual and continued change of possession, and Courts cannot evade its force and effect by an inquiry into the consideration paid by the purchaser, or the good faith of the transaction.

APPEAL from the District Court, Sixth Judicial District, Sacramento County.

The facts are stated in the opinion of the Court.

*H. H. Hartley*, for Appellant.

The cases of *Chenery* v. *Palmer*, 6 Cal. 119, and *Hackett* v. *Manlove*, 14 Cal. 9, lay down the doctrine that there is no difference between a sale and a mortgage of personal property, and that in both instances the act of sale or mortgage must be accompanied by an immediate delivery and actual and continued change of possession.

If, then, these authorities are law, the mortgage of plaintiff was absolutely void *ab initio*, because at the time of its inception no possession was taken under it. Section seventeen of the Statute of Frauds holds that no mortgage of personal property shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee, except in special cases. Now it is contended by the plaintiff that there is a difference between sales and mortgages—that in the former case the statute requires an immediate delivery, and that in the latter it does not, and that the delivery may be at any time. We insist there is no such distinction. The statute requires, in the case of mortgages, delivery and retention of possession, and surely that is intended to be immediate. (*Stewart* v. *Scannell*, 8 Cal. 80 ; *Vance* v. *Boynton*, Id. 554 ; *Van Pelt* v. *Littler*, 10 Id. 394; *Hurlburt* v. *Bogardus*, Id. 518 ; *Richards* v. *Schroeder*, Id. 431 ; *Stevens* v. *Irwin*, 15 Id. 504 ; *Engle* v. *Marshall*, 19 Id. 329.)

*George Cadwalader*, for Respondent.

There is no objection made to the ninth finding of the Court, " that all the transactions between plaintiff and Joseph O'Neill were *bona fide* and free from fraud." The kiln was the only security that plaintiff had for an advance of four thousand four hundred and fifty dollars ; and if plaintiff had not intervened on the eleventh of November for the protection of O'Neill's credit, Harris would have attached not only the brick kiln, but so much of the wood as the attaching creditors had then delivered to O'Neill.

This case comes under the seventeenth section of the Statute of Frauds. This section has received the same construction as the fifteenth of the same Act, although there is a marked difference in their verbiage and the transactions to which they severally apply. Thus where a sale is made in good faith there is no reason for the vendor without interest retaining possession of the property sold. Not so, however, in cases of mortgage, where the mortgagor, of course, has a direct interest in the preservation of the property.

In regard to the delivery of ponderous articles, the authorities are unanimous that the rule thereof is different from that of portable property. These ponderous articles are generally substances that are not sheltered from the weather, but lie around loose on wharfs and in open lots, apparently unprotected and without an owner. Saw logs, piles of lumber, cord wood, pig iron, granite and stone in blocks, bricks, ore, and heavy castings, are in general the representatives of such property. (*Lay* v. *Neville*, 25 Cal. 545; *Chaffin* v. *Daub*, 14 Cal. 384.)

Chancellor Kent lays down the following rules with regard to bulky articles: " The consent of the parties upon the spot is a sufficient possession of a column of granite, which, by its weight and magnitude, was not susceptible of any other delivery, and possession was taken by the eyes and the declared intention." (4 Kent, 500.)

Again: " A bill of sale of timber and materials of great bulk, lying on the banks of a canal, or marking the timber, has been held to be a delivery sufficient to make the possession follow the right; it was as complete a delivery and possession as the subject matter reasonably admitted." (Id. 501; *Manton* v. *Moore*, 7 Term, 67.)

In the case of *Leonard* v. *Davis*, 1 Black, 482, the question of delivery between buyer and seller was raised of a quantity of saw logs floating in a boom, which the Court disposed of by saying: " While floating in the water they were only in the constructive possession of the owner, and under such circumstances a symbolical delivery is all that can in general be

expected, and is amply sufficient to pass the title." (*Ludwig* v. *Fuller*, 17 Maine, 166 ; *Boynton* v. *Veasil*, 24 Id. 288 ; *Macomber* v. *Parker*, 13 Pick. 175 ; *Hutchings* v. *Gilchrist*, 23 Vt. 88 ; *Gibson* v. *Stevens*, 8 How. 384.)

By the Court, CURREY, J.

The plaintiff brought his action to recover damages against the defendant for seizing and taking a kiln of bricks alleged to be the property of the plaintiff, and of the value of five thousand six hundred dollars. The defendant justified his acts on the ground that the property belonged to Joseph O'Neill, and that the defendant as Sheriff of the City and County of Sacramento seized and took the same by virtue of certain writs of attachment issued in actions brought by divers creditors of O'Neill, and that said property was so seized and taken as the property of O'Neill, and was in fact his property at that time and liable to be levied on under and by virtue of said writs of attachment and to be held thereunder to satisfy any judgments which might be recovered in the actions in which such writs of attachments were issued.

The plaintiff claimed to own the kiln of bricks in question as the purchaser thereof from O'Neill ; and the defendant as Sheriff, representing the attaching creditors, controverted the plaintiff's right to the same on the ground that the sale thereof by O'Neill to him was, as to the creditors named, void by the Statute of Frauds. The cause was tried by the Court without a jury. Judgment was rendered for the plaintiff. The defendant moved for a new trial which was denied.

The Court found that on the 22d of October, 1861, O'Neill was the owner of a kiln of green or unburned bricks, which was then nearly completed, and that on that day, being indebted to the plaintiff in the sum of three thousand two hundred dollars, the former executed and delivered to the latter, as security therefor, a bill of sale of said kiln of bricks, and in the same instrument further agreed, in consideration of said indebtedness, to proceed as soon as practicable to burn

said kiln at his own expense. At the time of the execution of this instrument the kiln of unburned bricks was not of the value of the consideration expressed. The plaintiff did not attempt to take possession of the property at that time. On the 11th of November thereafter one Harris, to whom O'Neill was indebted in the sum of two thousand three hundred dollars, threatened a suit for its recovery, when the plaintiff and another person became sureties for its payment, upon which O'Neill, for the purpose of securing the plaintiff against loss on account of this contingent liability, as well as for the amount already due him, made to the latter a formal delivery of the kiln of bricks, by declaration on the ground where it stood, in the presence of a witness, that he delivered the same to him for the purpose stated. At that time the burning of the kiln had been commenced. O'Neill thence remained in possession of the kiln, attending to the burning of it, and for that purpose employed hands, whom he paid. He also purchased wood with which to burn the kiln. All this was done by O'Neill at the plaintiff's request and in pursuance of their agreement made on the 22d of October. O'Neill completed the work of burning the kiln on the 19th of the same November, and on the following morning, before the property was attached, informed the plaintiff thereof and told him to take his property. At some time afterward, on the same day, the property was attached by the defendant. Three days after this the plaintiff served on the defendant a notice that he was the owner of the property and entitled to its possession, and by the same means demanded of him to deliver it to the plaintiff. At the time of attaching the kiln O'Neill was not there. The kiln which was one hundred and thirty feet long, thirty feet wide and fifteen feet high, was then and for several days after too hot to be removed. During the period from the 11th to the 19th of November and while the bricks were in process of burning, the plaintiff was at the kiln five times, but did not notify any one about the premises of his claim. The Court further found that the plaintiff at the time of the trial had paid half the sum due from O'Neill to Harris; that he had not

received anything on his demand of thirty-two hundred dollars; that he and O'Neill believed the bill of sale was operative and valid as a security in his hands, and that all the transactions between them were *bona fide* and free from fraud. The Court further found that it was not indispensably necessary that O'Neill should have continued in charge and possession of the kiln of bricks after the 11th of November, but that plaintiff could have obtained competent persons to have superintended and performed the work and procured the wood necessary for burning the kiln, and that the work and labor performed by O'Neill, including the wood furnished by him, enhanced the value of the kiln of bricks.   The Court further found that after the 11th of November there was no change in the possession and management of the property from that which existed before then.   That from that date to the 19th of the same month inclusive, O'Neill used and controlled the property as before then, and that the "plaintiff had done no acts to give notice or notoriety to his possession of the property."

The counsel for the respective parties are not entirely agreed as to the character of the transaction between O'Neill and the plaintiff—that is, whether it was a sale or a mortgage.   It was the one or the other, and it matters not which, because, in either event, the principle upon which the case depends is the same.   The property in question was of a character that could not be transferred from the vendor to the vendee, or from the mortgagor to the mortgagee, by a manual delivery, and as between the parties the transfer attempted to be made may be considered as sufficient to pass the interest intended to be transferred; but as to the creditors of O'Neill the transaction must be determined by reference to the provisions of the Act concerning fraudulent conveyances and contracts, the fifteenth section of which reads as follows: "Every sale made by a vendor of goods and chattels in his possession, or under his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of

the things sold or assigned, shall be conclusive evidence of fraud as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith;" and the seventeenth section of which reads as follows: "No mortgage of personal property hereafter made shall be valid against any other persons than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee." (Laws 1850, p. 267.)

If the instrument executed on the twenty-second of October, and the transactions which transpired then and subsequently on the eleventh of November, be considered a sale of the kiln of bricks, then, in order to protect the property from the creditors of the vendor, the vendee was bound to take possession of it and thence continue in its actual possession. The words " actual possession " contained in the statute are used in contradistinction to constructive possession, which is an incident of and dependent on right and title. If the same instrument and transaction be considered a mortgage, then to make the mortgage valid as to any other persons than the parties thereto, the property should have been delivered to and retained by the mortgagee. The kind of possession which it was necessary for the mortgagee to have of the mortgaged property to place it beyond the reach of the creditors of the mortgagor was an actual possession; otherwise the seventeenth section of the Act would be without any efficient meaning, and would wholly fail to accomplish the useful purpose for which it was designed. What constitutes an actual and continued change of possession is well stated in *Stevens* v. *Irwin*, 15 Cal. 506; and in *Godchaux* v. *Mulford*, 26 Cal. 323. What acts will amount to an immediate delivery and an actual and continued change of possession of personal property of a cumbrous and ponderous nature—such as a kiln of bricks—must depend in a great degree upon the circumstances of the particular case, as was said in *Lay* v. *Neville*, 25 Cal. 552; but care should be taken in such cases to keep in view the object of the statute, and to exact nothing less than a substan-

tial observance of its salutary provisions. In no case that we
are aware of has the Supreme Court of this State laid down a
rule requiring less than that the purchaser must have that
possession which places him in the relation to the property
which owners. usually are to the like kind of property. In
*Lay* v. *Neville* the Court, in reference to the subject, say : "It
was intended that the vendee should immediately take and
continuously hold the possession of the goods purchased, in
the manner and accompanied with such plain and unmistak-
able acts of possession, control and ownership, as a prudent *bona
fide* purchaser would do in the exercise of his rights over the
property, so that all persons might have notice that he owned
and had possession of the property." In this case O'Neill was
permitted to remain in the possession of the property, for the
purpose of burning the bricks—and for aught that could have
been seen by the most vigilant he owned it as absolutely and
exclusively as he would if nothing had transpired between
him and the plaintiff. He employed hands to assist him in
the work, and purchased fuel with which to burn the kiln,
and in all things, to outward appearances, conducted himself
as the owner of the property. There was nothing done by
the plaintiff to indicate to any one that he had any property
in the kiln of bricks, notwithstanding he visited the premises
five times while the bricks were in process of burning. The
fact that O'Neill finished the work of burning the kiln the day
before it was attached, and informed the plaintiff the next day
before the Sheriff levied that he had completed the work and
told him to take his property, does not, in our judgment, aid
the plaintiff. O'Neill had been all the while, from the time
of his contract with the plaintiff, in the actual and open pos-
session of the property, adding by his labor, care and skill to
its value, and this, too, by an arrangement made by him with
the plaintiff. After he had done his work, he gave the plain-
tiff notice that he had completed his part of his contract, and
told him to take the property. This was the first time it was
ever proposed to make a complete and final delivery of the

property, which, if it had been effectuated, would have amounted to an open and visible change of the possession. After this information and notice, there was nothing done to manifest or render it evident that the possession of O'Neill had ceased, or that the plaintiff had acquired the actual possession of the property. We think the case clearly within the mischiefs, to prevent which the statute was passed, and that judgment ought to have been for the defendant instead of the plaintiff.

The judgment is therefore reversed, and the Court below directed to enter judgment for the defendant.

Mr. Chief Justice SANDERSON expressed no opinion.

[The foregoing opinion was delivered at the October term, 1865. On petition for a rehearing, the following opinion was delivered at the January term, 1866.—REP.]

By the Court, CURREY, C. J.

We have examined the plaintiff's petition for a rehearing and the authorities to which reference is therein made. Much is said in the argument which accompanies the petition in relation to a constructive delivery and possession of personal property of a cumbrous and ponderous nature. It was quite unnecessary to make an issue with the Court upon the language used in the opinion delivered, as to the necessity of an immediate delivery and an actual and continued change of possession of the property in controversy, in order to satisfy the requirements of the Statute of Frauds. The distinction between an actual and a constructive possession was therein referred to and explained. In the sense of the terms "immediate delivery" and "actual and continued change of possession," employed in the statute, a delivery and possession of cumbrous articles of personal property may be fully consummated. The mode and manner are indicated in the opinion and by the cases of *Stevens* v. *Irwin* and *Lay* v. *Neville*, therein referred to. The plaintiff's counsel is quite mistaken in sup-

posing that we overruled *Godchaux* v. *Mulford, ex necessitate,* by anything said in our opinion in this case. In that case it is distinctly held that the vendor " cannot be allowed to remain in the apparently sole and exclusive possession of the goods after the sale, for that," it is said, " would be inconsistent with such an open and notorious delivery and actual change, as the statute exacts, in order to exclude from the transaction the idea of fraud." The Court found that from the time of the verbal delivery of the property there was no change in the possession and management of it from that which existed before then, and that from that time until the burning of the kiln of bricks was completed, O'Neill used and controlled the property as he had done before the sale or assignment; and further, that the plaintiff had done no acts to give notice or notoriety of his possession of the property. The facts so found rendered the transfer of the property invalid as to creditors, not only within the rule prescribed by the statute, but also in accordance with the doctrine declared in *Godchaux* v. *Mulford.*

The rule which our statute prescribes admits of no excuse dispensing with an actual and continued change of possession of the property sold, assigned or mortgaged, in order to place it beyond the reach of the creditors named therein, and when consulting the decisions of other Courts than our own it should be remembered that we have a statute more definite and exacting than those under which the decisions of such other Courts were made. The statute of 13th Elizabeth contained no provisions similar to the fifteenth and seventeenth sections of our Statute of Frauds, but it did contain a provision, of which the twentieth section of our statute is in substance a transcript. Under that Act the Courts held that the continuance of the vendor in possession after sale, was presumptive evidence that the sale was designed to hinder, delay and defraud the creditors of the vendor. In *Edwards* v. *Harben,* 2 T. R. 587, it was the unanimous opinion of the Court that, unless possession accompanies and follows the sale, it is fraudulent and void. In that case, the Court held that where there

was nothing but an absolute conveyance, without the possession, the want of possession was not merely evidence of a fraudulent sale, but that the sale was to be deemed fraudulent in law. But upon this point the tendency of the later decisions of the Courts of Westminster Hall has been to qualify and perhaps to overthrow the doctrine declared in *Edwards against Harben*, and to leave the entire circumstances of each case to the jury to decide whether the presumption of fraud to be deduced from a want of change of possession should prevail. In the American States the decisions of the Courts respecting sales and mortgages of chattels without a transmutation of possession, have been various and diverse. In some States the principle has been established that unless possession follows the sale, the sale is by the statutes 13th and 27th Elizabeth to be held fraudulent in law and void as to creditors and subsequent *bona fide* purchasers; while in others it has been held that the vendor's retaining possession inconsistently with the conveyance is only *prima facie* evidence of fraud which may be rebutted. That the question of fraud is one of fact to be passed upon by the jury. In *Hamilton* v. *Russell*, 1 Cranch, 97, Mr. Chief Justice Marshall approved and adopted the doctrine laid down in *Edwards* v. *Harben*, holding that an " unconditional sale, where the possession does not accompany and follow the deed, is, with respect to creditors, on the sound construction of the statutes of Elizabeth, a fraud, and should be so determined by the Court." Such a deed, he said in the same case, must be considered as made with an intent to delay, hinder and defraud creditors. In *Meeker* v. *Wilson*, 1 Gallison, 423, Mr. Justice Story followed the Court in *Hamilton* v. *Russell*. In both these cases it was said the statute of 13th Elizabeth was only declaratory of a principle of the common law. The decisions made under the statutes of 13th and 27th Elizabeth observe a distinction between a sale absolute in terms and one made upon condition which does not entitle the vendee to immediate possession. Without discussing or explaining the principle on which the distinction is founded, we may say it was long ago discovered that sales upon terms

apparently consistent with the continued possession of the vendor might be and were made an effectual means of accomplishing frauds against the creditors of the vendor.    We may remark, at this point, that our statute has abolished all distinctions between absolute and conditional sales.

The Courts which have attempted to follow the doctrine of *Edwards* v. *Harben* have necessarily been much embarrassed by the many exceptions to the rule there laid down.    The Statute of 13th Elizabeth was re-enacted in New York in 1787. In *Sturtevant* v. *Ballard*, 9 John. 337, Mr. Chief Justice Kent, in an effort to introduce the rule declared in *Edwards* v. *Harben* and *Hamilton* v. *Russell*, into the jurisprudence of his State, found it encumbered with eight exceptions, and by subsequent decisions of the Courts of England and of the several States of America the exceptions became multiplied until in the year 1824, Judge Cowen, then Reporter, in an elaborate note to the case of *Bissell* v. *Hopkins*, 3 Cow. 189, particularly enumerated and considered twenty-four.    Upon which, as if in despair of ascertaining the status of the law on this subject so fruitful of controversies, he said : " When we look at the nature of the twenty-four different exceptions to the rule in *Edwards* v. *Harben*, which are above enumerated, it is time to ask what does the rule amount to ?   What is it worth? And does its preservation deserve a struggle ?   Some of the exceptions are almost as broad as the rule itself.    The nature of the instrument of sale, the kind of sale, whether directly between the parties, or on execution, or distress for rent, necessity, convenience, customs of doing business, the nature, quantity, relative value, distance, and place of the articles sold, the consideration, the relation of the parties, honesty, fairness, humanity, friendship, special circumstances, special reasons, etc., etc., have in their turn been called in by the different cases to fritter down the rule.    Sometimes the attempt to apply it strikes the Judges with such evident absurdity that they no longer proceed by way of exception.    Instead of attempting to untie, they cut the knot at once by denying the existence of the rule."    So the law on this subject remained

in New York, except perhaps the engrafting upon the rule a few more exceptions, until in December, 1827, an Act concerning fraudulent conveyances and contracts was passed, which, however, did not go into effect until the first of January, 1830. By this Act it was attempted to establish a rule settling for the future the controversies which, by diverse and conflicting opinions of Judges, had become inveterate to a degree rendering it doubtful at least whether any stable rule existed for the prevention of frauds upon creditors by pretended transfers of personal property. But the rule established by the New York Act failed to prevent the frauds against which the statutes 13th and 27th Elizabeth were aimed, as the judicial history of that State since the Act went into effect abundantly attests. The fifth section of the New York Act, in its phraseology, bears a resemblance in part to the fifteenth section of our statute, but its import is very different. The fifth section referred to reads as follows: "Every sale made by a vendor, of goods and chattels in his possession, or under his control, and every assignment of goods and chattels by way of mortgage or security, or upon any condition whatever, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold, mortgaged or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith, and shall be conclusive evidence of fraud, unless it shall be made to appear, on the part of the persons claiming under such sale or assignment, that the same was made in good faith, and without any intent to defraud such creditors and purchasers." By the section here quoted, the want of an immediate delivery, and thereafter an actual and continued change of possession of the things sold, mortgaged or assigned, raised a presumption only that the transaction was fraudulent and void as to creditors, etc. The fact in the first instance presumed became a matter conclusively established by the fact of a want of delivery and an actual and continued change of possession, provided it was

not made to appear that the sale, mortgage or assignment was made in good faith and without intent to defraud such creditors and purchasers.   The fifteenth section of our statute declares that a sale or assignment so made, unless it be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things sold or assigned, shall be conclusive evidence of fraud as against the creditors of the vendor or the creditors of the person making such sale or assignment, or subsequent purchasers in good faith.   Our statute, it will be observed, makes that conclusive evidence which the New York Act makes only presumptive evidence.   The New York Act not only permits but suggests that the party claiming under the sale or assignment impeached for want of a delivery and an actual change of possession, may " make it appear that the same was in good faith and without intent to defraud creditors and subsequent purchasers."   Our statute admits of no explanation excusing the delivery and change of possession.   Therein is the difference, which it is manifest the Legislature intended in order to exclude all inquiry as to the consideration paid by the purchaser, or as to his motives and intentions in the premises.   If in fact there was not an actual and continued change of possession given, the statute pronounces the transfer fraudulent as to creditors, and the Courts have no right to seek to evade its force and effect.   No excuse or explanation for want of an actual and continued change of possession can be entertained, and it is quite useless to cite decisions made under the statutes of Elizabeth and of New York, or other States, allowing the want of an immediate delivery and an actual and continued change of possession to be explained or accounted for as authoritative expositions of the rule which our statute has prescribed.

The rehearing must be denied.

Mr. Justice SANDERSON expressed no opinion.