## Case No. 4,285.

### EDMONDSON v. HYDE.

[2 Sawy. 205;[1] 7 N. B. R. 1; 5 Am. Law T. Rep. U. S. Cts. 380.]

Circuit Court, D. California. June 17, 1872.

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

Wm. H. Patterson, for plaintiff in error.
H. C. Hyde, in pro. per.

SAWYER, Circuit Judge.  The statute of
frauds of the state of California, contains
the following provisions, viz.:

"Sec. 15. Every sale made by a vendee of
goods and chattels in his possession, or un-
der his control, and every assignment of
goods and chattels, unless the same be ac-
companied by an immediate delivery, and be
followed by an actual and continued change
of possession of the things sold or assigned,
shall be conclusive evidence of fraud, as
against the creditors of the vendee, or the
creditors of the person making such assign-
ment, or subsequent purchasers in good
faith."

"Sec. 17. No mortgage of personal prop-
erty hereafter made, shall be valid against
any other person than the parties thereto,
unless possession of the mortgaged property
be delivered to and retained by the mort-
gagee."

Under these provisions, it is well settled
by numerous decisions of the supreme court
of the state, that without an immediate and
continued change of possession, sales and

mortgages of personal property are absolutely void as against creditors. The statute of this state is much more stringent than the statutes of 13th and 27th Elizabeth, and the various statutes of New York, and several other states, and cuts off many questions which arose under those acts. Woods v. Bugbey, 29 Cal. 475, 479.

It was settled by the supreme court of California so long ago as 1856, that, under the statute of frauds of that state, the change of possession must be immediate, and a sale or mortgage, being void at its inception, for want of such change of possession, that a subsequent delivery before a creditor acquires his lien, does not render it valid as to such creditors—that being void originally, it does not become valid from the date of a possession subsequently taken. Chenery v. Palmer, 6 Cal. 121. See, also, Hackett v. Manlove, 14 Cal. 89; Woods v. Bugbey, 29 Cal. 471.

The case of Chenery v. Palmer, so far as I am aware, has never since been overruled, or questioned by the court. This construction of the statutes of California must govern this court, and it must therefore be assumed that, under the statute of frauds of California, the bills of sale and mortgage in question are void as to the creditors of Clark, and confer no rights upon Edmondson as against them. The record subsequently made availed nothing. The property could not, under the statute, in any event, be validly mortgaged by a recorded mortgage, without a change of possession. This being so, we come to the important question in the case, what relation does the assignee in bankruptcy hold to the property, and what relation does he sustain to the creditors and the bankrupt? On the one hand it is contended that the assignee represents the bankrupt, and stands exactly in his shoes; that his position is no better and no worse; that he can set up no right against the vendee, or mortgagee, that the bankrupt could not set up; and as the transactions were valid, as between Clark and Edmondson, they are valid as to him.

On the other hand, it is insisted that the assignee represents the creditors, and as these conveyances are void as to them, they are void as to the assignee, and he is entitled to the property. On this point the decisions in the district and circuit courts appear to be conflicting, as will be seen by reference to 6 Am. Law Rev. 50, where they are collected and reviewed. To my mind, the conclusion that the assignee under the present bankrupt act, whatever the rule may have been under former bankrupt acts, English or American, takes the property as against the vendee or mortgagee in a bill of sale or mortgage, void as against creditors under the statute of frauds, is clearly correct. Undoubtedly, in some respects, the assignee is a representative of the bankrupt, but as to the property of the bankrupt, its administration and distribution he primarily represents the creditors. The whole object of taking possession of the property of the insolvent is, to distribute it equally and equitably among his creditors according to their several rights. It is to give to the creditors, so far as the property will go, that which under the law they are entitled to obtain in some form. The creditors themselves, not the bankrupt, choose the assignee, or, upon their failure to choose, the judge or register selects him. Upon what principle, unless he represents their interests in this particular? The constituent or principal usually appoints his own representative, why not in this case? Section 14. The property, in fact, at once goes into the custody of the law, primarily for the benefit of the creditors. and the assignee himself is but an officer of the court, to administer and distribute the property under its direction to the creditors according to their rights, as recognized by the law at the time of the institution of the proceedings, except so far as preferences are designated. Section 14 provides what the effect of the assignment shall be, and among other things, "That no mortgage of any vessel, or any goods or chattels made as security for any debt, or debts in good faith, and for present considerations, and otherwise valid and duly recorded, pursuant to any statute of the United States, or of any state, shall be invalidated or affected hereby; and all the property conveyed by the bankrupt in fraud of his creditors * * * shall, in virtue of the adjudication in bankruptcy, and the appointment of his assignee, be at once vested in such assignee; and he may sue for and recover said estate, debts, and effects, etc."

Now what mortgages are here carefully protected against the general creditors? The act plainly specifies them. They are such, only as are "otherwise valid and duly recorded pursuant to any statute of the United States, or of any state." But the sales and mortgages in question were not "otherwise valid," or duly recorded, but on the contrary, were expressly made void as to creditors by the statute of California. They are not enumerated as protected in favor of the vendee and mortgagee, but on the contrary carefully excluded. The attention of congress was specially called to chattel mortgages, and the language of the act is carefully framed, so as to recognize and protect such liens as were already valid by the laws of the land—the statutes of the United States, or of the state, where the transactions occurred. I do not see why the maxim "expressio unius est exclusio alterius" is not peculiarly applicable in this case. Besides, the act goes on to provide in express terms, that "all property conveyed by the bankrupt in fraud of his creditors * * * shall, in virtue of the adjudication of bankruptcy, and the appointment of his assignee, be at once vested in such assignee, etc."

What does this phrase, "in fraud of his creditors," mean? Can it be limited to property conveyed with a specific intent to de-

fraud creditors, or is it to be extended to conveyances in fraud of creditors in the technical and legal sense of the term? If the latter there is an end of the controversy, for, in that sense, the statute in express terms says, the property shall go to the assignee. Upon what principle can the construction be limited to the former class? The conveyances in question are in fraud of his, Clark's creditors, under the statute of frauds of the state, for the language of the statute is, that a want of an immediate and continued change of possession, "shall be conclusive evidence of fraud as against creditors." They are, therefore, both within the letter and spirit of the bankrupt act.

All conveyances made void as against creditors by the statute of frauds, in legal contemplation are made in fraud of such creditors, whether they are fraudulent, in fact, by specific intent, or only fraudulent in law. Generally such conveyances are, almost necessarily, fraudulent in fact, as well as in legal contemplation. A party who mortgages a stock of goods for example, and yet retains possession, controls and sells them, and surrounds them with all the indicia of ownership in himself, lulls existing creditors into a false security, and induces others to credit him on the supposition of his ownership, thus working actual fraud, whether so specifically intended or not. This result having been found in practice to be so common, the dictates of good policy suggested that the law should, in all cases, declare that to be fraudulent in contemplation of law, regardless of any specific intent, which was ordinarily found to be so in fact. The term, "in fraud of his creditors," is used in a statute relating to a subject matter, in which frauds of the character provided for in the statute of frauds have always abounded; and it must be presumed, that congress intended to use the term in its broadest technical, or legal sense. The occasion demanded such a use, and congress would, naturally, so provide, for its object was remedial as to creditors—to furnish a remedy in place of other remedies taken away by the bankrupt act. A liberal construction must be given to advance the remedy, rather than a strict one to destroy the right. There is nothing in the act to indicate that it was intended to be limited to conveyances made with a specific intent, at the time, to defraud creditors. I find nothing in the statute as a whole, which manifests an intent to infringe the rights of creditors, or to take away all remedy for an existing right, which would be equivalent to destroying the right itself; but on the contrary, the statute read as a whole shows, that the assignee is intended to be an officer of the court, acting under its direction, to take, administer and distribute the property of the bankrupt primarily for the benefit of all the creditors, without impairing their rights in any particular except as specifically provided. Any other construction would absolutely abrogate the statutes of frauds of the several states, and practically validate, as to creditors, these transactions, which such statutes say shall be void, and take from the creditors that property, which the state statute says they shall have, and give it to the fraudulent vendee, or mortgagee, when the state law says he shall not have it.

Let us see how such a construction would operate in California, for example. In this state, any creditor upon a contract for the direct payment of money, made or payable within the state, upon default of payment, may attach the goods of his debtor at once, not for the purpose of obtaining jurisdiction of the party, but as a levy upon the goods in advance of the judgment to secure the payment of his demand. A merchant secretly mortgages or conveys his entire stock in trade to a third party, but retains possession, and goes on with his business in the usual way, obtaining further credit on the faith of appearances, but is finally unable to meet his obligations. His creditors—all perhaps relying on appearances, have become so since the said mortgage or sale—attach his goods. The statute of California says that the sale or mortgage is void as to the creditors, and gives the property to them through the legal proceedings taken, or that may be taken. But as soon as an attachment has been levied, the debtor himself, or some creditor, files a petition in bankruptcy; an adjudication of bankruptcy follows; an assignee is appointed, and thereby the attachments are all dissolved, and the creditors forbidden to proceed in the state courts to enforce their claims to the property. The assignee steps into the bankrupt's shoes, and as he represents the bankrupt only, the conveyance or mortgage, although void as to creditors, under the statute of frauds, is valid as between him and the fraudulent vendee or mortgagee, and the property is taken from the creditors who have already fastened upon it; or if they have not done so, might do so under the laws of the state, and given to such fraudulent vendee, or mortgagee, in direct contravention of the statutes of the state, and the rights of creditors under them. Such, evidently, must be the result, unless an actual intended fraud can be proved. And if this view is adopted, experience shows that we shall have an abundance of such cases. In that view, the bankrupt act kindly steps in, and does for the debtor and his fraudulent grantee that which they originally set out to do, but which the statute of the state declares shall not be done. The fraud upon creditors which the state statutes seeks to prevent, the bankrupt act aids the parties to fully accomplish. These consequences cannot be avoided, unjust, unreasonable, or absurd as they may seem, if such is clearly the proper construction of the bankrupt act. But when the construction is wholly deduced as a matter of reasoning, from the position of the assignee as a supposed, rather than an

expressly declared personal representative of the bankrupt—for there is no express provision in the act pointing directly or inferentially, to the relation as so claimed to exist—I think it legitimate to look to such unjust, unreasonable or absurd results with a view of ascertaining, whether it is at all probable that they could have been contemplated by congress in passing the act. In my own judgment, such could not have been the intention of the legislator. Besides, the whole tenor of the act indicates to my mind, that it was intended to protect the rights of the creditors as against the debtor and his fraudulent grantee, as they existed under the laws in force where the transaction occurs, and that, in this particular, the assignee primarily represents the creditors, rather than the debtor. I am satisfied from the clause before quoted, read in connection with the other provisions of the act, that the assignee under the present act, whatever may be true of former acts, was designed to succeed to the rights of property in those cases of secret conveyance, which were not "otherwise valid and duly recorded pursuant to any statute * * * of any state," and to all property conveyed by the bankrupt in fraud of his creditors, whether the conveyance was merely fraudulent in law, or was fraudulent in fact. My conclusion is, that the assignee is entitled to the property in question. In this view I am supported by Chief Justice Chase on the circuit. In re Wynne [Case No. 18,-117]. As quoted in the American Law Review, he says: "It may be, and we think it is true, that if the deed remained unrecorded when the petition in bankruptcy was filed, the title of the assignee would have prevailed against any claim under the deed; for the assignee represents the creditors, and the statute of Virginia expressly declares 'any deed of trust void as to creditors' until and except from the time it is duly admitted to record. It is not an unreasonable construction of the bankrupt act, as we think, which regards it as vesting in the assignee, for the benefit of creditors in general, the estate of the bankrupt, discharged of liens or trust which, at the time of the petition, are valid only inter partes, under the statute of the state in which they are claimed to exist." 6 Am. Law Rev. 53.

So, also, in Bank of Leavenworth v. Hunt, 11 Wall. [78 U. S.] 394, the reasoning of the court is very pointedly to the same effect. This was, also, a suit by the assignee in bankruptcy to recover personal property of the bankrupt from the mortgagee in a mortgage not recorded as required by the statute to give it validity. The assignee recovered. The judgment was affirmed by the supreme court. One of the grounds upon which the decision is put is, that the supposed agreement, if established, was void as against other creditors of the bankrupt under the statute of frauds of Kansas. Id. 394, 395. Thus the principle is expressly recognized,

that as between the mortgagee in a mortgage, void as against creditors under the statute of frauds, for want of a proper registry, and the assignee in bankruptcy, the assignee is entitled to the property. The district court in this district has so ruled repeatedly, and so clear did the proposition seem to me, that I have on more than one occasion affirmed its rulings on writ of error, without any extended discussion of the question. I should do so now, but for the fact that counsel have called my attention to a very recent decision of the supreme court, in Gibson v. Warden [14 Wall. (81 U. S.) 244], which, they earnestly insist, settles the question the other way.

This makes it necessary to re-examine the question in the light of that decision. It must be confessed that an observation made in stating the grounds of the decision affords some support to the position taken by counsel of the plaintiff in error; and upon a hasty reading, I was inclined to think that principles were stated that would lead to the result claimed; but the precise question was not involved, and upon a more attentive perusal, I am satisfied that the point was not decided, or intended to be decided, or covered by the principles laid down. The question was not in the case. There is this broad difference between that case and the one now under consideration. In Gibson v. Warden [supra], under the statute of frauds of the state of Ohio, as construed by the supreme court of that state, the mortgage in question was valid from the date of delivery, and the delivery took place in time to render it valid as to the creditors. In that case, then, the mortgage in question was a valid mortgage as to the creditors, as well as inter-parties. So far as the statute of frauds of Ohio was concerned, there was, therefore, no question between an assignee in bankruptcy and a mortgagee, in a mortgage void under the statute of frauds. In the case now in hand, the sales and mortgage are void under the statute of frauds of California, as the construction is settled by the supreme court of the state, and the question is between the assignee and vendee and mortgagee in sales and mortgages so void under the statute of frauds. The mortgage in Gibson v. Warden being valid as to the creditors under the statutes of Ohio, the only question left was whether it was valid under the thirty-fifth section of the bankrupt act. The thirty-fifth section does not declare that mortgages shall be void for want of delivery of possession, or want of registry. It only provides that certain conveyances made to evade the bankrupt act, within certain times, four and six months, before the filing of the petition, shall under certain prescribed circumstances be void. The mortgage in question being held valid as to creditors under the statute of frauds of Ohio, the question remained whether it was void under said thirty-fifth section of the bankrupt act,

on the ground of its having been made for the purposes therein prohibited, within four or six months before filing the petition. The mortgage had been actually made more than six months before the filing of the petition, but possession had not been taken till three days within six months of said filing. But want of possession is not stated as one of the elements of invalidity by the provisions of that section.

Although not stated in this precise form, the result seems to be that the possession having been taken in time to render the mortgage valid as to creditors under the statute of Ohio, no further question arose under that act; and as the bankrupt act did not make a mortgage void for want of a delivery, or record, that the conveyance must be deemed to have been made for the purpose of the thirty-fifth section at the time it was actually made, and not at the time when possession was taken under it. At all events, it was held:

1. That the mortgage was valid as to creditors under the statutes of Ohio.

2. That with reference to the thirty-fifth section of the bankrupt act, it was made more than six months before the filing of the petition, and was, therefore, not void under that act. These were the points decided. It being valid under both, it was a valid mortgage, and the right of the mortgagee was superior to those of the assignee. I do not think the court intended to hold, or to lay down principles necessarily leading to the result, that, had the mortgage in question been void as to creditors under the statute of Ohio, the mortgagee would still have been preferred to the assignee on the ground that the assignee strictly represented the bankrupt only, and succeeded to his status with respect to the mortgagee, without in any sense representing the rights or succeeding to the status of the creditors. The decision seems to have been concurred in by the entire court, and I cannot think the court would have squarely overruled the views so recently and pointedly expressed in Bank of Leavenworth v. Hunt [supra], and by the chief justice, in Re Wynne [supra], upon a point of so vital importance, and so wide spread in its application, and consequences, without in some way alluding to those cases, or at least more fully discussing the precise question. If I could satisfy myself that such was the intention and decision of the court, I should unhesitatingly follow it, without presuming to question the correctness of the determination. As I do not understand that the court has intended to overrule the views expressed in those cases, or to lay down principles which would necessarily lead to that result, and as my own convictions are very decided upon the points now in issue, I shall adhere to my former ruling until the supreme court has an opportunity to examine and determine the precise question. The question now presented frequently arises in the district court, and, I am informed, is already pending in other cases. Should the doctrine contended for by the plaintiff in error be finally established, the statute of frauds of this state, so far as relates to this question, would hereafter be nugatory, and might as well be stricken from the statute book, and I apprehend in many cases hereafter arising but little property will be found uncovered by such sales and mortgages to be distributed among general creditors. At all events, the establishment of such a principle would hold out large inducements for the commission of frauds in this convenient form.

Two other points have been made, though not much argued. It does not appear whether the questions presented by them were raised in the court below or not. One is, that certain portions of the property in question were exempt from execution, under the laws of California, and that, as to these at least the title did not pass to the assignee; but is in Edmondson by virtue of his bills of sale and mortgage. No authority has been cited on the point. The exemption from execution, and, I think, also in the bankrupt act, is a right or privilege given to the debtor and bankrupt. He may waive it by not claiming the exemption. The bankrupt did not treat this property as though it was, or would be, claimed under the exemption law, when he included it with other like property in his said bills of sale and mortgage, all of which were given for the purpose of security only. He has made no claim himself to have it set apart under the act. If the bankrupt does not choose to assert any claim to have it exempted, I am of the opinion, that the mortgagee is in no position to claim it as against the assignee.

The only remaining point is, that judgment is rendered payable in "gold coin," without finding any such state of facts as would justify that kind of a judgment. The court, however, found the value of the property in "gold coin" and not in legal tender currency. This appears in the record. The supreme court has, in repeated instances, as have various statutes of the United States, recognized the fact universally, publicly known, and acted upon in the business transactions of the country, with which everybody must be supposed to be familiar, that there is a difference in value between gold coin and currency issued under the legal tender acts. In other states, doubtless, the value of the property would have been found in legal tender currency. But as all business transactions in California are based on coin values, the district court has found the value of the property in coin. It would have been the regular mode, in the absence of a stipulation by the parties, to have found the value in currency. But this would only have involved the necessity of ascertaining the difference in value between coin and currency, and adding it to the coin value. The result would,

practically, have been the same, for the amount of currency would have been increased, so as to equal the value, as actually found in coin. The party would have been required to pay exactly the same value as now, although the number of dollars in currency would have been greater. He is, therefore, in no way injured by the judgment for coin. Doubtless, if he had called the attention of the court to the matter at the trial, and desired it, the court would have found the value in legal tender currency. I do not think I should be justified in reversing the judgment on this ground under the circumstances, as no injury resulted from the error, if error there is.

The judgment of the district court must be affirmed, and it is so ordered.