CAREY ALLEN, administrator of SYLVESTER EDSON, *v.* LYMAN
MOWER.

[IN CHANCERY,]

An answer, responsive to the bill, and not asserting a right *affirmatively*, in
opposition to the right claimed in the bill and independent of it, is proof of
the facts stated in the answer.

But, if the answer assert matter *affirmatively*, though it be responsive to the
bill, *quære*, whether, upon a traverse, the answer shall be received as proof,
or as mere pleading requiring to be proved.  BENNETT, J.

Though the intestate, in his lifetime, may have combined with the defend-
ant to receive a transfer of certain *choses in action* belonging to the intestate,
to avoid the trustee process and the rights of the intestate's creditors, yet,
if he received from the defendant a full consideration therefor, a court of
chancery will not decree that the defendant pay to the administrator the
value thereof a second time, for the benefit of creditors, though the estate
may be greatly insolvent.

The statute,—Rev. St. 275, § 39,—giving an action to the executor, or ad-
ministrator, where there has been a fraudulent conveyance, to the injury
of creditors, should extend only to cases where the fraud would, without
such action, prove prejudicial to the assets of the estate.

IN THIS CASE the orator alleged in his bill that he had been duly
appointed administrator upon the estate of Sylvester Edson, de-
ceased, who died May 29, 1839, and that, at the time of his decease,
and for some years previous thereto, the said Edson was greatly in-
debted, and to an amount much beyond his ability to pay ; that all
his visible property had been attached by his creditors, but that he
still retained, and kept concealed, much personal property, which
he should have devoted to the payment of his debts; that, for the
purpose of such concealment, he was accustomed to take notes, for
money which he lent, or for property sold, payable to some friend,
or bearer; and that, especially, just previous to the first day of
January, 1839, when the statute extending the remedy by trustee
process was to come in force, he was very active in placing his
money and other personal property in the hands of persons who

were willing to befriend him in keeping his property out of the reach of his creditors; and that all this was well known to the defendant.

The orator farther alleged, that, on the 26th day of March, 1838, one Thomas McLaughlin, being indebted to said Edson in the sum of $1300, at the instance of Edson signed a note for said indebtedness payable to the defendant, or bearer, on demand, with interest, and also, at the same time, executed a mortgage to the defendant of certain premises to secure the payment of said note, and delivered the said note and mortgage to Edson; that the defendant had no interest whatever in the said note and mortgage, and that Edson's intent in taking the note and mortgage to the defendant was to place the debt out of the reach of his creditors; and that the defendant, well knowing the said intent of Edson, received the said note and mortgage, and had obtained a decree of foreclosure of the equity of redemption of the mortgaged premises.

The orator farther alleged, that, in the spring of 1838, Edson was the owner of three promissory notes, all executed by Edmund S. Hayden, two of said notes, one for $700, and the other for $500, being made payable to John Lake, or bearer, and the other of said notes, being for $600, payable to John N. White, or bearer; that neither the said Lake nor the said White had ever any interest in said notes, but the same were taken payable to them with the intent, on the part of Edson, to thereby secrete the same from his creditors; that, on the 31st day of March, 1838, the defendant, having no interest whatever in said notes, but with a readiness and intent to aid Edson in the collection of the money due upon the notes without making known to his creditors his interest therein, commenced an action in his own name, as bearer of the said notes, against the said Hayden,' and subsequently recovered judgment against him for $2225 damages; that the defendant had no interest in said judgment, but prosecuted the said action to effect solely for the benefit of Edson; and that afterwards, on the 31st day of December, 1838, being the day previous to the coming in force of the statute relative to the trustee process, above referred to, the defendant, with intent to aid Edson in more effectually placing the amount due upon said judgment out of the reach of Edson's creditors, pre-

tended to purchase said judgment of said Edson, and afterwards collected a large part thereof, and converted the same to his own use.

The orator farther alleged that Edson, on the 28th day of December, 1838, held notes against one Bullard, which were secured by mortgage, and which Bullard had no means of paying, except by releasing to Edson his equity of redemption in the mortgaged premises; that Edson, with the fraudulent intent, as above set forth, procured Bullard to execute a quitclaim deed of the said premises to the defendant; and that the defendant, with like intent, received the said deed, pretending to purchase the said premises of Edson, and caused said deed to be recorded, and Edson then discharged his mortgage.

And the orator alleged that there were debts outstanding against the estate of Edson to the amount of nearly $50.000, and that the estate was insolvent to a large extent, and that, by the transactions above set forth, the debts and property above specified had been kept entirely out of the reach of the creditors.

The defendant, in his answer, admitted the truth of the orator's allegations as to the indebtedness of Edson, his decease, and the insolvency of his estate; he also admitted that he received of Edson the note and mortgage executed by McLaughlin, mentioned in the orator's bill,—but alleged that he received them in pursuance of a written agreement, entered into by him in March, 1838, at the request of Edson, and to enable him, as he said, to pay some of his creditors, who had offered to make him a discount upon their demands, by which agreement the defendant was to pay Edson $1000, in four and six months, and have a *bonus* of six *per cent.* for raising the money, and have the said note and mortgage as security; and he alleged that he paid to Edson the said sum of $1000,—deducting the *bonus,*—and that afterwards, and before the first day of January, 1839, Edson solicited him to purchase the balance due on said note, and that he did so, and paid to Edson therefor the sum of $300 in money,—the said Edson allowing him the interest which had accrued.

The defendant farther alleged, that, in the summer of 1837, Edson, being indebted to him in about the sum of $1130, for money

advanced by the defendant for him at different times, placed in the defendant's hands, as collateral security therefor, the two notes signed by Edmund S. Hayden, and payable to John Lake, mentioned in the orator's bill; that, in March, 1838, Hayden being in failing circumstances, the defendant consulted with Edson in reference to the expediency of commencing an action upon said notes, to which course Edson advised, and then told the defendant that he held another note against said Hayden,—being the note specified in the orator's bill as payable to John N. White,—and requested the defendant to include that note in the same writ with the two notes held by the defendant, in order to save costs; that the defendant commenced an action upon said three notes, and recovered judgment thereon, as alleged by the orator ; that afterwards, in November, or December, 1838, the defendant applied to Edson for payment of the sum for which the notes against Hayden were pledged to him, and requested him to take the control of the said judgment,—no part of it having then been collected,—and that Edson then wished to raise funds to pay a debt on which he had been committed to jail, and also some other debts, and solicited the defendant to purchase his interest in the judgment against Hayden, and also to purchase a claim which he held against one Bullard for about $1500, which was secured by mortgage,—being the same claim mentioned in the orator's bill ; that afterwards, on the 31st day of December, 1838, the defendant purchased of Edson the said judgment against Hayden,—Edson making a discount of twenty *per cent.* on the amount due thereon,—and gave up to Edson his claim against him for the money advanced, amounting then to $1213,50, and paid the balance to Edson in money, being $563,50 ; and that, on the 28th day of December, 1838, he purchased of Edson his claim upon the premises occupied by Bullard, and paid him therefor the sum of $1500 in money,—Edson procuring Bullard to execute a quitclaim deed of the premises to the defendant.

And the defendant denied all knowledge of any intent in Edson, by these transactions, to defraud his creditors, or put his property out of their reach, and all participation on his part in any such intent, but claimed that his only object in each transaction was to make a fair and honest trade.

Testimony was taken upon both sides; the testimony on the part of the orator tended to show a general intent on the part of Edson to put his property out of the reach of his creditors.   Some portion of the payments, which the defendant claimed that he had made to Edson, were proved,—but of others there was no proof except the answer.

The court of chancery dismissed the bill, with costs, from which decree the orator appealed.

*T. Hutchinson* and *C. Marsh* for orator.

1.   The defendant is chargeable with  constructive notice of Edson's fraudulent intent.   The circumstances were abundantly sufficient to apprise him  of  this intent  and put him on his  guard.   A knowledge of facts, from which a particular *inference* must necessarily follow, is, in law, knowledge of such inference.

2.   The defendant, in his answer, *avers* that in the fall of 1837 Edson owed him $1130  for money which he had  before  advanced for him,—that is, paid to other persons for  his benefit.   This averment may be regarded as a plea in bar to that part of the bill which claims relief on  account of these notes having been placed  in  the defendant's hands  without  consideration,  or with a fraudulent intent.   It is an averment *dehors* the bill, and, as such, is to be supported by testimony.   The answer, though sworn to, has no tendency to prove the fact.   The defendant is only a witness, in chancery,  in denying the charges in the bill.   When he avers an *independent fact*, by way of defence, he is as much  bound to  sustain such fact, when traversed, as the plaintiff is to  prove the facts charged in the bill, when denied in the answer.

Now there is not a *scintilla* of evidence to sustain this averment in the answer.   Whatever property the defendant has received of Edson on account of this pretended  advance for Edson, that sum he clearly holds without having paid any consideration, and in trust for Edson's representative.   *Hart* v. *Ten Eyck et al.*, 2 Johns. Ch. R. 62.

3.   The purchase of the Bullard claim is the most remarkable transaction in the whole.   This was done at the last moment before the trustee act took effect.   There was no chaffering about the

9

Allen, Adm'r, *v.* Mower.

price, or time of payment. In the other cases there was a *bonus*, or some *deduction*, but none here. The money was carefully counted over, and the deed executed, in the presence of witnesses. But *whose* was the money thus paid over?

4. The testimony taken in the case shows, we think, conclusively, that the defendant was perfectly acquainted with the motives of Edson, and that he intentionally co-operated with and aided him in effecting the object.

*Chandler* and *Tracy & Converse* for defendant.

To entitle the orator to a decree in his favor he must show that the defendant received the property of Edson without paying any consideration therefor, and solely in trust for Edson. Such is the complaint, and upon that his right to recover is predicated. The answer admits that the defendant received some property of Edson, but insists that it was received upon a fair and *bona fide* purchase, and that an *adequate consideration* was paid therefor.

Whatever may have been the knowledge of the defendant of the intention of Edson to evade the trustee law, or the attachment of his property by his creditors, this court will not vacate the contracts between him and Edson, nor compel the defendant to account for any property received by him of Edson, on any other condition than that he should be indemnified for what Edson owed him, and for what he actually paid towards the property. This court will not compel him to pay for the property twice, as that would be manifestly inequitable. But how can it be contended that the defendant had any such knowledge? It is positively denied in the answer; no express knowledge is proved; and, instead of its being proved that there was any *general understanding*, or *rumor*, of the kind, the reverse is proved.

Again, we insist that the plaintiff could not sustain this suit, though all the allegations in the bill were proved. He could not, at the time of commencing this suit, have sustained any suit which his intestate could not; and it is very manifest that the intestate could not have questioned the legality of the transactions between himself and the defendant.

Allen, Adm'r, *v.* Mower.

The opinion of the court was delivered by

BENNETT, J.   A question has been raised, in argument, how far the answer of the defendant is to be regarded as evidence.   The rule usually laid down is, that the defendant, is bound to answer every part of the substance of the statement and charges in the bill, and that every particular interrogatory, founded upon an express allegation in the body of the bill, must be answered precisely, in all its bearings and circumstances.   Labe's Eq. Pl. 267.   *Hepburn* v. *Durand,* 1 Brown 503.   *Mountford* v. *Taylor,* 6 Ves. 791.   *Woods* v. *Monell,* 1 Johns. Ch. R. 103.

The case of *Smith* v. *Clark,* 4 Paige, is full to the point that the charging part of the bill is not to be treated as mere surplusage, but that it must be answered.   If the answer sets up *affirmative* matter by way of avoidance, and is not responsive to the bill, upon a traverse of the answer all the authorities agree that the answer is not proof of such matter.

But if, however, the *affirmative* matter in the answer is responsive to the bill, it cannot be disguised that there is considerable discrepancy in the authorities, whether, upon a traverse, the answer shall be received as proof, or as more pleading, to be sustained by ordinary proof, like a special plea.   To hold, in cases, in which the answer asserts a right *affirmatively, in opposition to the right* claimed by the orator, that the answer is to be received as proof of such matter is in effect to make the defendant a witness for himself, and not simply for the orator.   It is readily perceived that every thing in the answer, responsive to the bill, as to the creation of the original liability charged, must be taken together, as part and parcel of one entire transaction.   But if the original liability is once admitted by the answer, it may, at least, be questioned, upon principle, whether the defendant can escape from it, except by proof *aliunde* the answer; and though the matter set up in defence is *responsive* to the bill, yet if it is distinct, and wholly independent of the original liability charged, it may be inquired why the defendant should not support it by proof, as well as the orator his claims.   Though the plaintiff makes the defendant a witness for himself, yet should this, in any case, give the defendant the right to be his own witness, as to any matter in defence disconnected with, and independent of, the *original* liability?   So far as the present case is concerned, it is·

not necessary to review the conflicting authorities upon this point; much less to express any opinion. The bill now before us calls directly upon the defendant to answer whether he had any interest in the securities by him taken, or whether he received them *without consideration*, and in trust for Edson, with the *intent* and for the purpose charged in the bill. To answer fully, necessarily involved the statement of all the circumstances, the conditions and consideration upon which they were received; and the whole is but a single transaction; and the answer is clearly competent evidence. It fully denies all knowledge in the defendant of any fraudulent intention in Edson in making a disposition of these demands, and affirms that he purchased them in good faith, and for a valuable consideration.

Though we might be all satisfied that the evidence was sufficient to show fraud in Edson, yet, for one, I should hesitate in finding the evidence sufficient to countervail the answer, so as to connect the defendant with the fraudulent intention in Edson. It is, however, unnecessary to pass upon that point. In the case now before us a full consideration was paid to Edson, by means of which his estate was benefited to that amount; and it is the same thing as if it had been paid to his administrator. It is not to be presumed that the intestate has wasted his estate, but rather that the consideration paid has gone to increase his assets. If we were to decree against the defendant, it would, in effect, give the estate the benefit of receiving a second time the full value of this property, and inflict a penalty upon the defendant. This would be inequitable, and is a sufficient reason why chancery will not lend its aid to the administrator. Equity has already been done.

The Statute,—Rev. St. p. 275, § 39,—giving to the executor, or administrator, in case of deficiency of assets, a right to prosecute to final judgment for the benefit of creditors, where there has been a fraudulent conveyance to the injury of creditors, should not be extended to a case like this, but only to cases where the fraud will be otherwise prejudicial to the assets of the estate.

The result is, we advise an affirmance of the chancellor's decree, dismissing the bill, with additional costs in this court. The case is remitted to the court of chancery, to be proceeded with accordingly.