Hillsborough, }
  June, 1900. }

CHILDS & a. v. HILLSBOROUGH ELECTRIC LIGHT AND POWER CO. & a.

A resolution adopted at a special town meeting, authorizing and directing the selectmen to contract for the lighting of streets, is a vote to raise and appropriate money within the meaning of section 4, chapter 40, of the Public Statutes, and is invalid unless taken by a ballot in which one half, at least, of the voters participated.

BILL IN EQUITY, by taxpayers of Hillsborough, to restrain the town and its officers from appropriating money to an unauthorized and illegal use. Facts agreed.

At a special meeting of the inhabitants of the town, the following resolution was declared to be adopted: " Resolved, that the selectmen be now authorized and directed to contract with the Hillsborough Electric Light and Power Company within ten days to relight our streets in the same manner as heretofore, covering the time from now to April 1, 1905, at a total cost to the town of thirteen dollars per lamp per annum; also to add lamps to the electric system as in their judgment the public good requires, in number not exceeding twenty-five." The vote was not taken by ballot. Ninety-three voted in favor of, and forty-one against, the resolution. The number of legal voters borne on the check-list at the next preceding annual election was about seven hundred. There was in the town treasury at the time of the passage of the resolution a sum of money previously appropriated for lighting purposes sufficient to pay for lights according to the resolution for about eight months.

If the resolution binds the town, the bill is to be dismissed; if not, the officers of the town are to be restrained from appropriating money to carry it into effect.

*Allan M. Wilson*, *Robert L. Manning*, and *Burnham*, *Brown & Warren*, for the plaintiffs.

*John M. Mitchell*, for the defendants.  It is contended by those who object to the execution and performance of the contract provided for by vote of the town, that, as this vote was passed at a special meeting, it is void under section 4, chapter 40, of the Public Statutes, because the vote was not taken by ballot, and because the number of votes was not equal to one half the number of legal voters upon the check-list at the preceding annual election, — the contention being that this is a vote to "raise" or "appropriate" money, within the meaning of the statute.  The clause of the statute invoked by the plaintiffs, and on which they rely to nullify this vote, provides that "no money shall be raised or appropriated at any special town meeting, except by vote by ballot, nor unless the ballots cast at such meeting shall be equal in number to at least one half of the number of legal voters borne on the check-list of the town at the annual or biennial election next preceding such special meeting; and such check-list may be used at such meeting upon the request of ten legal voters of the town." The defendants insist that this was not a vote to "raise" or "appropriate" money, and that it was legally adopted at a special meeting, notwithstanding it was not by ballot and lacked that number of votes legally necessary to authorize the raising or appropriating of money by a town meeting.  This proposition involves a correct answer to the question: Is a vote authorizing town officers to make a contract for street-lighting for a definite time, at a specified price, a vote "raising" or "appropriating" money, within the meaning of the law?

The terms "raise" and "appropriate" have, in law, well-defined significations; and, having ascertained their legal meaning respectively, we can readily see whether this vote is obnoxious to the letter or spirit of this statute.  By section 2, chapter 2, of the Public Statutes it is provided: "Words and phrases shall be construed according to the common and approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed and understood according to such peculiar and appropriate meaning." Another familiar rule in the interpretation of statutes is the ascertainment of the intention of the legislature as expressed in words.  "The intention of the legislature is not to be made

the subject of guesswork or of speculation, nor is it to be inferred from any other materials than those which are found within the statute." Wilb. Stat. 103. "It is beyond question the duty of courts in construing statutes to give effect to the intent of the law-making power, and seek for that intent in every legitimate way. . . . If the words are free from ambiguity and doubt, and express plainly, clearly, and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. . . . Even when a court is convinced that the legislature really meant and intended something not expressed by the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of language which is free from ambiguity." Suth. Stat. 312, 314 ; *Alexander* v. *Worthington*, 5 Md. 485.

The word "raise," as defined by Webster, is, " to levy ; to collect. . . . Government *raises* money by taxes, excise and imposts." In the Century Dictionary "raised " is defined, " to take up by aggregation or collection; procure an amount or supply of; bring together for use or possession." To " raise money," as is well understood by every citizen of New Hampshire, is the result of voting to " raise " a specified sum, assessing a tax therefor upon polls and estates of the inhabitants, and collecting the amount by the authorized officer. *Thompson* v. *Fellows*, 21 N. H. 425, 432. It is plain, therefore, that a vote to " raise money " is a vote in which it is stated that a certain amount of money shall be raised for a specified purpose, which will authorize the assessment and collection of a tax therefor; and any vote which does not authorize the assessment of a tax and its collection does not provide for raising money within the meaning of the law. A vote which may create a condition that will ultimately result in the necessity of money to satisfy the obligation of a town is not a raising of money within the meaning of the law ; that is, a vote authorizing the making of a contract is not and cannot be a vote raising money. The vote under consideration did not authorize the assessment or collection of a tax, and, lacking these essentials, did not constitute a vote to raise money. The article under which this vote was passed does not contemplate the passage of a vote to raise money. It simply provides authority for a vote " to instruct the selectmen to contract " for electric lighting, within certain limits.

The article does not contemplate, nor does the vote attempt, an appropriation of money. As before suggested, it simply authorizes — perhaps we should say requires — the making of a contract by the selectmen, within the limits indicated in the vote. The language of the statute is "that no money shall be . . . appropriated at any special meeting except" in the manner indicated by the statute. The term " appropriate " has a well-defined, well-

understood meaning and signification in law, when used in this connection. There is a well-marked distinction between an act that makes an appropriation of money and an act that creates or authorizes a contract which may ultimately require money for its satisfaction, and may be created without an appropriation at the time.

The correctness of this proposition will be readily seen upon a clear understanding of the meaning of the term "appropriate," or "appropriation." In the Century Dictionary the word "appropriate" is defined, "to set apart for or assign to a particular purpose or use, in exclusion of all other purposes or uses." Webster defines it as "to set apart or vote a sum of money for a particular object, as congress has appropriated a million of dollars for the increase of the navy." To constitute an "appropriation," the amount of money must be specified, the particular object to which it is to be applied designated, and that amount set apart in the treasury for the particular use, to the exclusion of all others. It is a plain, simple, common-sense use, application, and definition of this term; and the simple statement of this definition clearly demonstrates that the vote in question did not appropriate, or attempt to appropriate, money for electric lighting. Where courts have regarded and defined the meaning of the words "appropriate" and "appropriation," it will be found that the definitions for which we contend are those which have been uniformly recognized.

"A promise by the government to pay money is not an appropriation. A duty on the part of the legislature to make an appropriation is not such. A promise to make an appropriation is not an appropriation. The pledge of the faith of the state is not an appropriation of money with which to redeem the pledge. . . . The United States has from time to time, in the course of her history, entered into treaty with foreign nations, whereby she has engaged most solemnly to pay specified sums of money at fixed times; . . . and yet no instance is within our recollection where it has been contended for a moment that executive or administrative officers could pay those exactly specified sums thus due, and on which the peace of the nation might depend, without a further appropriation by congress of the money, unless it had been thus appropriated in advance." *Risteen* v. *Indiana*, 20 Ind. 328. "It is clear upon authority that the promise to pay contained in the certificates is not an appropriation." *Carr* v. *State*, 127 Ind. 204. "'Appropriated by law' means the act of the legislature setting apart, or assigning to a particular use, a certain sum of money to be used in the payment of debts or dues from the state to its creditors." *Clayton* v. *Arkansas*, 27 Ark. 129. In *State* v. *Wal-*

*lichs,* 15 Neb. 609, it is held that, under the provision of the constitution that no money shall be drawn from the treasury except in pursuance of a specific appropriation made by law, there can be no implied appropriation of money by the legislature. "In no case, however, which we have been able to discover, under any constitutional provision, has it been held that an appropriation is valid when it is uncertain in its amount, and uncertainty arises in regard to the extent of the demands or claims which the recipients of the fund may present against it." *State* v. *Moore,* 50 Neb. 88. "To constitute an appropriation there must be money placed in the fund applicable to the designated purpose. The word 'appropriate' means to allot, assign, set apart, or apply to a particular use or purpose. An appropriation in the sense of the constitution means the setting apart a portion of the public funds for a public purpose." *State* v. *LaGrave,* 23 Nev. 25. "An appropriation, within the meaning of the constitution, . . . is a designation of the amount and the fund out of which it shall be paid." *McCauley* v. *Brooks,* 16 Cal. 11. "By a specific appropriation we understand an act by which a named sum of money has been set apart in the treasury and devoted to the payment of a particular claim or demand." *Stratton* v. *Green,* 45 Cal. 149. "Has the legislature fixed the amount of the claim and designated its payment out of a certain fund? These are the only things necessary to the validity of an appropriation." *Humbert* v. *Dunn,* 84 Cal. 57.

The foregoing authorities demonstrate clearly and unmistakably the attitude of the courts of other jurisdictions on this question, and it must be admitted that their position is supported by reason. It would seem, therefore, to be settled that there is a broad distinction between an appropriation and an obligation to make an appropriation. An application of the reasoning of the authorities to the facts of the case at bar will dissipate the mist created by the plaintiffs' untenable position. Acting under a warrant for a special town meeting, the town passed a vote authorizing the selectmen to make a specified contract, and to add lamps to the existing electric system. What did the citizens of the town authorize or direct by the passage of this vote? Precisely what the natural meaning of the words would indicate. They instructed the selectmen to make a contract. Nothing more and nothing less. They did not appropriate money for carrying out the contract. For this there was no necessity, there being in the town treasury at the time of the passage of the resolution a sum of money, previously appropriated for lighting purposes, sufficient to pay for lights according to the resolution for about eight months. Moreover, the resolution fails to specify any certain amount to be raised, or to indicate the source from which it should be drawn or

collected. This in itself would be a fatal objection to calling it an appropriation of money. Of course, a vote may direct or authorize an appropriation without using the word "appropriate"; but it must state a specific sum, definite and certain in amount, set apart for a definite purpose. This certainty is entirely lacking. The resolution, consider it as we will, falls far short of being an appropriation of money, and is simply what its terms imply,—a direction of the selectmen to make a contract. Those terms should not be so extended as to cover by implication what they do not contain. We ask the court to adopt the construction that accords with reason and common sense. We feel assured that they will not read into it that which the legislature has not inserted. The words "raise" and "appropriate" are clear and explicit, and their meaning plain. We submit that the distinction between an appropriation and an obligation which may call for an appropriation is too well defined to admit of any doubt.

CHASE, J. The town of Hillsborough has authority to enter into a contract for lighting its streets. P. S., c. 40, ss. 3, 4; *Blood* v. *Electric Co.*, 68 N. H. 340, 341. The plaintiffs say the town did not lawfully exercise the authority because its vote was an attempt to raise and appropriate money, and, being taken without a ballot at a special meeting attended by less than half of the voters of the town, was not passed as required by the last clause of the following provision of the statutes: "Towns may, at any legal meeting, grant and vote such sums of money as they shall judge necessary to support schools; to build and repair schoolhouses; to maintain the poor; to lay out, build, and repair highways and sidewalks; to build and repair bridges; to light streets; . . . but no money shall be raised or appropriated at any special town meeting except by vote by ballot, nor unless the ballots cast at such meeting shall be equal in number to at least one half of the number of legal voters borne on the check-list of the town at the annual or biennial election next preceding such special meeting." P. S., c. 40, s. 4. The question for consideration, then, is: Would money be "raised or appropriated," within the meaning of those words as used in the statute, by the contract referred to in the resolution?

By the first part of the section, authority is conferred upon towns to "grant and vote," or, in other words, to give and appropriate, money for certain purposes. This includes authority to make contracts in respect to the specified purposes by which money is to be paid in the future. The last clause of the section limits the manner in which the authority can be exercised at special meetings. "Raise" and "appropriate" there correspond with "grant" and "vote" in the first part of the section. "Vote,"

when used in such a connection, and "appropriate" have the same meaning. To "raise" money, as the word is ordinarily understood, is to collect or procure a supply of money for use, as, in the case of a municipal corporation, by taxation or perhaps loan. Money cannot be actually given or appropriated before it is raised. A promise to give or appropriate money may be made before the money is actually procured; but in such case the promise binds the promisor to have the money on hand when it becomes due, and so, in a sense, the money is raised by the promise. As authority to grant money includes authority to promise a grant of it, so an exception in respect to raising money includes an exception of a promise by which money must be raised.

By the contract mentioned in the resolution, the town would promise to pay the defendants thirteen dollars a year for each light furnished for lighting streets during the specified term. If the resolution had also provided for raising and appropriating the money required to fulfill the promise as it should become due, the case would fall within the terms of the limitation in their narrowest sense. The effect of the resolution in its present form, if valid, is the same as it would be with such a provision in it. The town must seasonably raise or appropriate sufficient sums of money to pay for the lights in accordance with its promise. If it does not do so voluntarily, the law will step in and do it. A judgment recovered upon the promise could, if necessary, be enforced by a compulsory assessment and collection of taxes, and an appropriation of the same to its payment. P. S., *c.* 234, *ss.* 4, 9, 10. The circumstance that the actual raising or appropriation of the money is deferred does not seem to be material.

If the legislature intended that a minority of the voters may bind the town at a special meeting to the same extent that a majority can, there would seem to be no reason for placing a limitation upon their power to raise or appropriate money. A policy which would allow a minority of voters to bind a town to pay money, but would not allow them to take the necessary steps to provide the money with which to make the payment, would be of questionable soundness, to say the least. Moreover, a limitation upon the act of raising or appropriating money would be useless if the power exists to make contracts by which the money must be raised and paid. The limitation could always be avoided by simply changing the form of the act from that of raising or appropriating money to that of agreeing to pay money for the desired purpose. The evil which the legislature intended to avoid by the passage of the limitation would continue as if there were no limitation. It is unreasonable to suppose the legislature would take trouble to pass an act that would be so futile. "When a statute

is capable of two constructions, one of which leads to absurd, irrational, or unjust results, and the other to reasonable and just results, the latter is to be adopted as an expression of the legislative intention." *Thompson* v. *Estey*, 69 N. H. 55, 75, and authorities cited; *Kendall* v. *Green*, 67 N. H. 557, 562, 563.

It appears altogether probable that the legislature used the words "raise" and "appropriate" in this statute in a broad sense, covering any action the necessary effect of which is to raise or appropriate money; and that the limitation in the last clause was intended to apply to all acts that were authorized in the first part of the section. The purport of the section, briefly stated, is that towns may grant and vote money for certain purposes, but shall not do so at special meetings unless by a vote by ballot in which one half, at least, of the voters take part.

According to the provisions of the case, the officers of the town should be restrained from appropriating money to carry the resolution into effect.

*Case discharged.*

All concurred.